UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION - FLINT

THOMAS BREWER,
        Plaintiff,

vs.                                  CIVIL NO. 2:07-CV-10357

MICHAEL J. ASTRUE,               HON. ARTHUR J. TARNOW
        Defendant                    HON. STEVEN D. PEPE.
                              /

## REPORT AND RECOMMENDATION

**1. Background**

Plaintiff, Thomas Brewer, brought this action under 42 U.S.C. §405(g) and §1383(c)(3) to challenge a final decision of the Commissioner finding that he was not entitled to Disability Insurance Benefits ("DIB") under Title II of the Social Security Act and Supplemental Social Security Income ("SSI") under Title XVI of the Social Security Act. Plaintiff and Defendant filed motions for summary judgment. Both motions have been referred to the undersigned pursuant to 28 U.S.C. § 636(b)(1)(B) and (C). For the following reasons, **IT IS RECOMMENDED** that the Commissioner's motion for summary judgment be **GRANTED**.

**A. Procedural History**

Plaintiff, Thomas Brewer, applied for disability insurance benefits ("DIB") and supplemental security income ("SSI") in November 2003, alleging disability since August 23, 2003, due to pain in his chest, arms, legs, ankles, back, and shoulders (R. 54-56, 171-74). Plaintiff's applications were denied on February 11, 2004 (R. 36-39, 176-179). Plaintiff appeared, with his current counsel, at a hearing before administrative law judge ("ALJ") Richard

L. Sasena on March 23, 2006 (R.214-41).[1]  ALJ Sasena's June 27, 2006, decision determined that Plaintiff was not eligible for Social Security benefits (R. 10-26).  The Appeals Council denied review on December 12, 2006 (R. 4-7).

B.  **Background Facts**

    1.  *Plaintiff's Hearing Testimony and Statements*

Plaintiff was 52 years old at the time of the hearing, and lives with his wife in a 2 story home (R. 220-21).  He graduated from high school, attending special education classes, and has no additional levels of education (R. 222).  Plaintiff takes care of his personal grooming dressing and bathing, but his wife does most of the household chores (R. 228).  Plaintiff loads the dishwasher, and if a mobility device is available he does grocery shopping.  He went fishing twice in the past year (R. 229).

Plaintiff can sit and stand for 15 minutes at a time, and can walk about half of a block before his legs start giving out (R. 230).  The heaviest item that the Plaintiff can lift, without pain, would be a gallon of milk.  Plaintiff has a driver's license, but only drives with a passenger as he is prone to blackout from anxiety attacks (R. 231).  Plaintiff's main activities are watching TV and walking around the house (R. 233).

Plaintiff has trouble maintaining attention and forget things "a lot" (R. 234).  Plaintiff spoke with his doctor about his mental problems, but the doctor did nothing.

Plaintiff is unemployed having last worked in April 2003 (R. 234).  Plaintiff previously

---

[1] Plaintiff had a prior hearing before ALJ Andrews on August 22, 2003, based on a July 2001 application which was denied (R. 217).

worked as a machine operator at Holly Plating in Holly, Michigan for 1 ½ years after suffering two heart attacks in one day, he returned to work for three months for five hour days, but was fired because he could no longer handle the work (R. 219).

Plaintiff stated his legs, which have bothered him since 2002, are the main hindrance to his returning to work. He experiences pain from the knees to his ankles and uses a cane at times (R. 221). Plaintiff has had tendinitis in his ankles (R. 220). Plaintiff's constant leg pain has worsened since 2003, and on a ten point scale he would rate the pain an 8 ½ at worst and a 3 at best (R. 224).

Plaintiff has experienced back pain since 1989, pain in neck since 1980 and numbness in his entire left arm has experience numbness since 2002 (R. 220). Plaintiff's arm pain was diagnosed as tennis elbow. Plaintiff's back pain arose when he was hit at work by a 35 pound object that fell 20 feet (R. 225). Plaintiff wears a back support only when his back hurts. On a scale of 1 to 10 Plaintiff rates his back pain an 8 at worst and a 3 at best. Plaintiff's neck was hurting at the hearing (R. 226). Plaintiff's back and neck pain have not worsened since 2003 (R. 227).

For the past year, Plaintiff has had health insurance through the State of Michigan (R. 221). Plaintiff has not filed for worker's compensation or unemployment and receives no supplemental income or food stamps. Plaintiff's wife works part-time at Holly Plating.

Since November 2005, Plaintiff had not seen a physician as his former doctor kept saying that there was nothing wrong with him (R. 222). Prior to that, Plaintiff last saw a doctor in June 2005 for a routine 6 month check-up.

In November 2004, Plaintiff's legs were swelling, and he went to his doctor for x-rays

which the doctor refused to administer as he believed that Plaintiff just had arthritis (R. 222-23).

Plaintiff is not taking any medicine as he cannot afford it. He has taken nitroglycerin, but is currently out and cannot afford anymore. Plaintiff does not know if insurance will pay for his medicine.

### 2. *Medical Evidence*

On December 30, 2003, Samiullah H. Sayyid, M.D., examined Plaintiff for a disability examination, and noted that Plaintiff is a 50 year old male "who has worked hard for 20-25 years," smoked 1 ½ packs of cigarettes a day since age 15, and formerly drank heavily (R. 106). Plaintiff's joint were normal except both knees, ankles, shoulders and back which have slightly decreased movement but no signs of crepitus, effusion or inflammation (R. 107). Plaintiff was limping heavily on the left knee. While using a cane, Plaintiff was able to walk on his heels and toes, squat and recover. Dr. Sayyid opined that Plaintiff suffered from coronary artery disease, had a history of head injury as well as a chain saw injury to the left leg (R. 108).

On July 28, 2004, Dr. Mohammed Syed, M.D.[2], examined Plaintiff who complained of intermittent chest pain, muscular cramps and back pain (R. 157). On August 2, 2004, Dr. Syed saw Plaintiff for a check-up and physical (R. 155). Plaintiff complained of back pain and muscular aches and cramps. On November 29, 2004, Dr. Syed found Plaintiff's neck to be supple and symmetrical; his chest symmetrical and clear to auscultation; and his musculoskeletal alignment symmetrical, with no defects, tenderness or masses (R. 153). An x-ray showed a tiny density in the mid-aspect of the knee joint, but no other deformities were observed (R. 166).

---

[2]Dr. Syed's notes are sparse and largely illegible.

On December 22, 2004, Matthew P. Dickson, Ph.D., a licensed psychologist, examined Plaintiff for the Michigan Disability Determination Service, and concluded that Plaintiff has an overall cognitive ability in the Extremely Low range (69) with his Verbal scale and Performance scores being in the Borderline range at 70 and 73 respectively (R. 121- 23). Dr. Dickson believed that Plaintiff's psychological condition would mildly impair performance of work related activities, and he attributed Plaintiff's low IQ score as likely due to 1989 head injury (R. 120).

### 3. *Vocational Evidence*

Vocational expert ("VE") Judith Findora characterized Plaintiff's past work as a machine operator as medium and the assembly, housekeeper and stocker positions as light, unskilled (R. 238).

ALJ Sasena asked VE Findora a hypothetical question assuming someone of the Plaintiff's age, education and the residual functional capacity ("RFC") with the following restrictions: performing light work involving lifting up to 20 pounds; a sit/stand option; no prolonged walking, standing or sitting; no repetitive pushing or pulling; limited stair climbing; no repetitive bending, twisting or turning; no crawling, stooping, squatting or kneeling; no operation of machinery or motor vehicles; no unprotected heights; not required to perform more than simple tasks of a couple steps; no requirement to understand, remember or carry our detailed instructions, maintain attention span or concentration for extended periods; and no requirement to tolerate change in the workplace setting or set realistic goals (R. 238-39). Could such a person perform Plaintiff's past work?

VE Findora stated that Plaintiff's prior jobs did not have a sit/stand option; however, there are machine operator and assembly jobs with a sit/stand option (R. 239). Additionally, such a person could work as a security guard (6,100 jobs), cashier (9,000), stock clerks (3,000), assembly (9,000), and machine operators (5,600). VE Findora stated that such jobs would customarily provide 15 minute breaks in the morning and afternoon as well as a lunch break ranging from 30-60 minutes (R. 239-40). Absenteeism, according to the VE, would permit one unexcused absence per month (R. 240). VE Findora clarified her listing of available jobs by noting that the machines she listed in the assembly and machine operator positions were consistent with ALJ Sasena's restrictions in the hypothetical and not actual, independent machines. Plaintiff's attorney asked no questions of VE Findora.

### 4. ALJ Sasena's Decision

ALJ Sasena found that Plaintiff was insured for benefits through the date of this decision, and had not engaged in work since the alleged onset date (R. 20). Plaintiff has "severe" impairments of arthritis, cardiac condition, cognitive disorder and dysthymia, but none of these impairments equals any impairment listed in Appendix 1, Subpart P, Regulations No. 4. 20 C.F.R. § 404.

ALJ Sasena determined that Plaintiff assertions concerning his ability to work are not totally credible. Plaintiff is unable to perform the requirements of his past relevant work and has no transferable skills from any past relevant work (R. 21).

ALJ Sasena found that Plaintiff retained the RFC to perform a significant range of simple, light work activity that involves lifting up to twenty pounds, the ability to alternate

6

between sitting and standing positions at will, no prolonged walking, standing or sitting; no more than occasional pushing or pulling; limited stair climbing; no more than occasional bending, twisting or turning; no crawling, stooping, squatting, or kneeling; no operation of machinery or motor vehicles and no exposure to unprotected heights. The claimant should also avoid work activity that requires the completion of tasks involving more than 1, 2 or 3 steps and tasks requiring the ability to understand, remember and carry out detailed instructions or to maintain attention span and concentration for extended periods of time. In addition, the claimant should avoid work activity that requires changes in the work place setting, setting realistic goals and planning independently (R. 20).

Based on the testimony of VE Findora, ALJ Sasena found that Plaintiff was not under a "disability" as defined in the Social Security Act, at any time through the date of decision (R. 20 - 21).

## II.  ANALYSIS

### A.  **Standards of Review**

In adopting federal court review of Social Security administrative decisions, Congress limited the scope of review to a determination of whether the Commissioner's decision is supported by substantial evidence. See 42 U.S.C. § 405(g); *Sherrill v. Sec'y of Health and Human Servs.,* 757 F.2d 803, 804 (6th Cir. 1985). Substantial evidence has been defined as "[m]ore than a mere scintilla;" it is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (*quoting Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). The Commissioner's findings are

not subject to reversal merely because substantial evidence exists in the record to support a different conclusion. *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (*citing Baker v. Heckler*, 730 F.2d 1147, 1150 (8th Cir. 1984).

If the Commissioner seeks to rely on vocational expert testimony to carry her burden of proving the existence of a substantial number of jobs that Plaintiff can perform, other than her past work, the testimony must be given in response to a hypothetical question that accurately describes Plaintiff in all significant, relevant respects.[3] A response to a flawed hypothetical question is not substantial evidence and cannot support a finding that work exists which the Plaintiff can perform.

**B.      Factual Analysis**

Plaintiff asserts that ALJ Sasena erred by (1) forming an inaccurate hypothetical that did not accurately portray Plaintiff's impairments, and (2) failing to conclude that plaintiff met Listing 12.05(C) (Dkt. # 9, p. 6).

**1.      Inaccurate Hypothetical:**

ALJ Sasena found that Plaintiff had "'moderate' deficiencies of concentration, persistence or pace (R. 18). In light of this finding, Plaintiff cites *Bankston v. Commissioner of*

---

[3] *See, e.g.*, *Varley v. Sec'y of Health and Human Servs.*, 820 F.2d 777, 779 (6th Cir. 1987) (hypothetical question must accurately portray claimant's physical and mental impairments); *Cole v. Sec'y of Health and Human Servs.*, 820 F.2d 768, 775-76 (6th Cir. 1987) (Milburn, J., dissenting) ("A vocational expert's responses to hypothetical questions may constitute substantial evidence only if the questions posed accurately portray the claimant's impairments."); *Bradshaw v. Heckler*, 810 F.2d 786, 790 (8th Cir. 1987) ("The question must state with precision the physical and mental impairments of the claimant."); *Myers v. Weinburger*, 514 F.2d 293, 294 (6th Cir. 1975); *Noe v. Weinberger*, 512 F.2d 588, 596 (6th Cir. 1975).

8

*Soc. Sec.*, 127 F. Supp.2d 820 (E.D. Mich. 2000), and contends that the ALJ's hypothetical question was flawed for not adequately accommodating these concentration limitations. In *Bankston*, this Court noted that it was reasonable to conclude under the regulations "that a mental deficiency occurring 'often' may not be consistent with substantial gainful employment." *Id.* at 826. The Court then determined that under the relevant portion of the PRTF, "often" should logically be defined as fifty percent of the time. *Id*. at 827. There, the finding that the claimant "often" had deficiencies of concentration, paired with the uncontested findings of the treating physician that he was disabled, resulted in a judgment of disability and a remand for award of benefits.

Plaintiff argues by analogy to *Bankston* that "moderate" in the ALJ Sasena's findings was equivalent to "often" under the Commissioner's prior regulations in effect at the time *Bankston* was decided. Under the Commissioner's prior evaluative scale, deficiencies in concentration, and other areas, were rated on a five-level range of frequency: never, seldom, often, frequent and constant. C.F.R. 404.1520a(c)(4) has since been amended to encompass a five-level scale based on *severity* rather than *frequency* of the limitation. The current scale rates severity as none, mild, moderate, marked and extreme. Thus, Plaintiff's argument is that a finding of "moderate deficiencies" is equivalent to "often," and under *Bankston*, such a limitation necessarily requires a finding that a claimant is disabled or at a minimum a remand because of a flawed hypothetical question.

Yet, since *Bankston*[4] was decided the Sixth Circuit has held that an ALJ's failure to

---

[4] The correctness of the *Bankston* decision under the previous regulation has been questioned as contrary to the Commissioner's Psychiatric Review Technique form instructions and the principle of deference to an administrative agency's construction of its own regulations so frequently noted since *Udall v*. *Tallman,* 380 U.S. 1, 16-17 (1965). *See* Report and

include in a hypothetical question a PRTF finding that a claimant "often" has difficulty concentrating is not a basis for remand when the hypothetical question adequately describes that claimant's limitations arising from a mental impairment. *Smith v. Halter*, 307 F.3d 377, 379 (6th Cir. 2001). In *Smith*, the ALJ marked on the PRTF that Smith "often" suffered deficiencies of concentration, persistence or pace, but did not include that finding in the hypothetical question to the VE. Smith, relying on cases similar to *Bankston* that did not include concentration problems being often in the hypothetical question, argued for a remand based on that omission. The Sixth Circuit, without citing *Bankston,* held that the hypothetical question asked by the ALJ was adequate. The court noted that while the ALJ checked a single box for "often" in a 1-5 rating scale on the PRTF,

> the ALJ went beyond this simple frequency assessment to develop a complete and accurate assessment of Smith's mental impairment . . . . In particular, the ALJ relied on the testimony of four physicians who characterized Smith's concentration problems as minimal or negligible. The ALJ then translated Smith's condition into the only concrete restrictions available to him–examining psychiatrist Schweid's recommended restrictions against quotas, complexity, stress, etc.– and duly incorporated them into his hypothetical to the vocational expert.

*Id.* at 379.[5]

The Court distinguished the several unpublished district court cases similar to *Bankston* because the ALJ's in those cases, while not including in the hypothetical question the finding

---

Recommendation accepted by Chief Judge Rice in *Ogden v. Apfel,* Case No. c-3-00448 (S.D. Ohio June 11, 2001) (suggesting that *Bankston* is simply wrong because it ignores the Commissioner's interpretation of "often" in the regulations which was not subject to judicial modification).

[5] It seemed significant to the court in *Smith* that the ALJ had noted there were four physicians who characterized Smith's concentration problems as minimal or negligible. In this case there is less weighty counter-evidence concerning the degree of concentration limitations than in *Smith*.

10

that the claimant "often" had difficulty concentrating, also did not otherwise account for such a concentration limitation. *Id.* Thus, when the ALJ makes a finding that the claimant has "moderate" problems with concentration under the new regulation, but does not specifically include that limitation in the hypothetical question, the issue on review is whether the ALJ used adequate alternate concrete job restrictions in the hypothetical question that suitably accommodated the claimant's concentration limitations.

A hypothetical question posed to the VE should include specific job-related restrictions, rather than broad limitations or categorical terms. While the ALJ is not required provide a verbatim recitation of the medical findings, the hypothetical question must adequately reflect those limitations. One court has held that a reference merely to "unskilled sedentary work" in a hypothetical question is insufficient to describe and accommodate concentration deficiencies. *Newton v. Chater*, 92 F.3d 688 (8th Cir. 1996). *Ramirez v. Barnhart*, 372 F.3d 546, 554 (3d Cir. 2004), held that a hypothetical stating "no more than simple one or two-step tasks; no travel outside the workplace; and a reasonable opportunity to receive and make personal telephone calls" failed to "take into account the ALJ's own observation (both in her opinion and in the PRTF) that [claimant] often suffered from deficiencies in concentration, persistence, or pace." *McGuire v. Apfel*, 1999 WL 426035, at *15 (D. Ore. 1999)( reference to routine, simple tasks, did not adequately accommodate "often" having deficiencies in concentration, persistence or pace).. *Keyser v. Barnhart,* No. 03-60078 (E.D. Mich., Sept. 2, 2004) (unpublished), held that a hypothetical question of "unskilled jobs with a low stress level alone" is not sufficient to accommodate a claimant who, under the Commissioner's new regulations, has "moderate limitations with respect to concentration, persistence or pace." This Court in *Bielat v. Comm'r*

11

*of Soc. Sec.*, No. 02-70791 (E.D. Mich. Apr. 4, 2003) (quoting *Andrews v. Comm'r of Soc. Sec.*, No. 00-75522 (E.D. Mich. Dec. 18, 2001) and citing *Thomczek v. Chater*, 1996 WL 426247 (E.D. Mich. 1996), has held that a hypothetical question including "unskilled sedentary work" plus the limitation of "jobs low at the emotional stress level" is not sufficient to accommodate a finding of a "marked" limitation in ability to concentrate or persist at tasks. *See, Andrews v. Comm'r of Soc. Sec'y,* No 00-75552 (E.D. Mich, Dec.18, 2001), finding that "difficulties in concentration" in a hypothetical question was insufficient to describe someone who "often" has "deficiencies of concentration, persistence or pace resulting in failure to complete tasks in a timely manner. . . ." *Walker v Barnhart*, 258 F.Supp.2d 293 (E.D. Mich. 2003), held that the ALJ's hypothetical question to the VE that the claimant could perform only simple, unskilled work did not necessarily take into account the non-exertional limitations imposed by Plaintiff's depressive disorder.

*Bankston* likely went too far in rewriting the Commissioner's regulations and quantifying "often" having deficiencies in concentration at 50%, which may be too high for "often" or "moderate" concentration limitations. Yet, even if a moderate deficiency means drifting off task 20% -30% of the time that would have a significant vocational impact unless quotas are eliminated from the hypothetical question or this limit is otherwise accommodated in the question. It is hard to reasonably accept "moderate" meaning anything less that 20-30% of the time at work. Thus, "moderate" concentration problems, even if not severe enough under the regulations to meet the listing of impairments for a finding of disability at Step 3 of the Commissioner's sequential evaluation, need to be included or accommodated in some suitable fashion in the hypothetical question at Step 5 of that sequence, and the inclusion in the

hypothetical of simple, routine jobs with a low stress level alone is not sufficient. *Smith* found that a hypothetical question that took into consideration "quotas, complexity, stress" was adequate in a case where the record also contained four physicians who characterized Smith's concentration problems as minimal or negligible.

Here Plaintiff was found to have "'moderate' deficiencies of concentration, persistence or pace." Yet, the hypothetical question not only limited the worker to (1.) unskilled jobs involving "simple tasks requiring one, two or three steps," and (2.) "[no] requirement to understand, remember or carry out detailed instructions," and (3.) jobs that are largely repetitive with only occasional changes in the workplace, ALJ Sasena specifically included a restriction that (4.) the jobs have no requirement "to maintain attention span or concentration for extended periods" (R. 239). These also were used at the March 2006 hearing and also were the RFC finding in ALJ Sasena June 2006 decision (R. 20).

ALJ Sasena translated Plaintiff's psychological limitation into work place restrictions in his hypothetical. Plaintiff's attorney had ample opportunity to ask further questions of the VE but asked none concerning concentration or any psychological or mental related limitation even though counsel had available the state agency psychiatrist's opinion that Plaintiff had moderate limitation in maintaining concentration, persistence, and pace.

This hypothetical question goes well beyond those in the cases sited above that found an insufficient consideration of limitations on concentration. Reviewing the record as a whole, it must be found that ALJ Sasena's hypothetical question meets the *Smith* standard for adequately accommodating a moderate limitation in concentration, persistence or pace.

Moreover, the ALJ considered Plaintiff's claims of physical limitations and discounted

13

them to an extent. Plaintiff testified that his back and neck pain have been present since the 1980s, yet he was able to work for well over a decade with that pain. Plaintiff has not asserted or medically shown that his back pain has worsened thus limiting his ability to work. Additionally, Plaintiff testified that his back and neck pain have not worsened since 2003. ALJ Sasena adequately considered Plaintiff's claims of pain in his hypothetical. VE Findora responded to this detailed hypothetical, including a sit/stand option and excluding jobs using independently powered machinery. He found that Plaintiff could work as a security guard (6,100 jobs), cashier (9,000), stock clerks (3,000), assembly (9,000), and machine operators (5,600). Because ALJ Sasena adequately addressed all of Plaintiff's exertional and non-exertional limitations, ALJ Sasena's hypothetical question is legally adequate, and the VE Findora's response upon which ALJ Sasena relies in his decision, is sufficient evidence to uphold a denial of disability benefits.

> 2. **Listing 12.05(C):**

Plaintiff claims that his condition meets Listing 12.05C and that his case should be remanded for an award of benefits. If "a claimant can show an impairment that meets the duration requirement (12 months) and is listed in Appendix 1 (the 'listings'), or is equal to a listed impairment, the ALJ must find the claimant disabled . . . ." *Gambill v. Bowen*, 823 F.2d 1009, 1011 (6th Cir. 1987). *See also* 20 C.F.R. § 404.1520(d) (2000). To meet a listing, a claimant "must meet *all* of the specified medical criteria. An impairment that manifests only some of those criteria, no matter how severely, does not qualify." *Sullivan v. Zebley*, 493 U.S. 521, 530 (1990) (emphasis added).

>> Listing 12.05C requires mental retardation, which is defined as:

>>> significantly subaverage general intellectual functioning
>>> characterized by deficits in adaptive functioning manifested during

> the developmental period; *i.e.,* the evidence demonstrates or supports onset of the impairment before age 22. The required level of severity for this disorder is met when the requirements in A, B, C, or D are satisfied.
> A. Mental incapacity evidenced by dependence upon others for personal needs (e.g., toileting, eating, dressing, or bathing) and inability to follow directions, such that the use of standardized measures of intellectual functioning is precluded;
> OR
> B. A valid verbal, performance, or full scale IQ of 59 or less;
> OR
> C. A valid verbal, performance, or full scale IQ of 60 through 70 and a physical or other mental impairment imposing an additional and significant work-related limitation of function;
> OR
> D. A valid verbal, performance, or full scale IQ of 60 through 70, resulting in at least two of the following:
> 1. Marked restriction of activities of daily living; or
> 2. Marked difficulties in maintaining social functioning; or
> 3. Marked difficulties in maintaining concentration, persistence, or pace; or
> 4. Repeated episodes of decompensation, each of extended duration.

20 C.F.R. Part 404, Subpt. P, App. 1, § 12.05C.

The Regulations further state that:

> The structure of the listing for mental retardation (12.05) is different from that of the other mental disorders listings. Listing 12.05 contains an introductory paragraph with the diagnostic description for mental retardation. It also contains four sets of criteria (paragraphs A through D). If your impairment satisfies the diagnostic description in the introductory paragraph and any one of the four sets of criteria, we will find that your impairment meets the listing.

20 C.F.R. Part 404, Subpt. P, App. 1, § 12.00A.

Under the Regulation, Plaintiff has failed to meet the conditions necessary to establish a finding of mental retardation. Nothing in the record suggests that Plaintiff has been

developmentally disabled prior to age 22. While Plaintiff did take special education classes, there is no indication that prior to age 22 he was ever diagnosed with "significantly subaverage general intellectual functioning." 20 C.F.R. Part 404, Subpt. P, App. 1, § 12.05C. In fact, Plaintiff graduated with a valid high school diploma, and was worked for 2 ½ decades with no record of any workplace limitations due to his mental functioning. Dr. Dickson's evaluation, suggests that Plaintiff's level of mental functioning is a recent occurrence due to a head injury (R. 117-23).

Putting aside the Plaintiff's failure to show that he was not significantly disabled prior to age 22, Plaintiff still does not satisfy the criteria for Listing 12.05C. While Plaintiff's score falls within the range established for an IQ score (60-70), Plaintiff does not meet the criteria established by the Regulations. Specifically, the Regulations state that:

> For paragraph C, we will assess the degree of functional limitation the additional impairment(s) imposes to determine if it significantly limits your physical or mental ability to do basic work activities, i.e., is a "severe" impairment(s), as defined in §§404.1520(c) and 416.920(c)[6]. If the additional impairment(s) does not cause limitations that are "severe" as defined in §§404.1520(c) and 416.920(c), we will not find that the additional impairment(s) imposes "an additional and significant work-related limitation of function," even if you are unable to do your past work because of the unique features of that work.

20 C.F.R. Part 404, Subpt. P, App. 1, § 12.00A.

Nothing in the record suggests that Plaintiff has a "severe" impairment. The only medical comments on the matter found Plaintiff's mental condition would only mildly impair

---

[6]20 C.F.R. § 416.920(c) states: (c) You must have a severe impairment. If you do not have any impairment or combination of impairments which significantly limits your physical or mental ability to do basic work activities, we will find that you do not have a severe impairment and are, therefore, not disabled. We will not consider your age, education, and work experience.

workplace performance (R. 120). ALJ Sasena noted that in speaking with Dr. Dickson, Plaintiff could accurately name past presidents, identify five large cities, discuss current events and perform simple math problems (R. 18). The absence of a diagnosis of mental retardation and indications that the low IQ score is a recent development supports the ALJ's finding that Plaintiff does not meet Listing 12.05C. *See Foster v. Halter*, 279 F.3d 348, 354-55 (6th Cir. 2002) ("A claimant must demonstrate that her impairment satisfies the diagnostic description for the listed impairment in order to be found disabled thereunder"). ALJ Sasena correctly determined that Plaintiff did not meet any of the criteria for Listing 12.05C, and as such it is recommended that the ALJ's decision be upheld.

### III.    RECOMMENDATION

For the reasons stated above, it is recommended that Defendant's Motion for Summary Judgment be **GRANTED** and Plaintiff's motion be **DENIED**. Either party to this action may object to and seek review of this Report and Recommendation, but must act within ten days of service of a copy hereof as provided for in 28 U.S.C. section 636(b)(1) and E.D. Mich. LR 72.1(d)(2). Failure to file specific objections constitutes a waiver of any further right of appeal. *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981), *Thomas v. Arn*, 474 U.S. 140 (1985), *Howard v. Secretary of HHS*, 932 F.2d 505 (6th Cir. 1991). Filing objections which raise some issues but fail to raise others with specificity will not preserve all objections that party might have to this Report and Recommendation. *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987), *Willis v. Secretary of HHS*, 931 F.2d 390, 401 (6th Cir. 1991). Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objection must be served upon this Magistrate Judge.

Note: any objections must be labeled as "Objection #1," "Objection #2," etc.; any

objection must recite precisely the provision of this Report and Recommendation to which it pertains. Not later than ten days after service an objection, the opposing party must file a concise response proportionate to the objections in length and complexity. The response must specifically address each issue raised in the objections, in the same order and labeled as "Response to Objection #1," "Response to Objection #2," etc.


DATED: November 19, 2007     s/ Steven D. Pepe
                             STEVEN D. PEPE
                             United States Magistrate Judge



CERTIFICATE OF SERVICE

I hereby certify that on November 19, 2007 , I electronically filed the foregoing paper with the Clerk of the Court using the ECF. system which will send notification to the following: Janet L. Parker,AUSA, Mikel E. Lupisella, Esq., Commissioner of Social Security ,and I hereby certify that I have mailed by U.S. mail the paper to the following non-EC. participants:  not applicable

                             s/ James P. Peltier
                             James P. Peltier
                             Courtroom Deputy Clerk
                             United States District Court
                             600 Church St.
                             Flint, MI 48502
                             810-341-7850
                             pete_peltier@mied.uscourts.gov